## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**BRITTANY SCHENK**
779 Bethany Circle,
Warminster, PA 18974

*Plaintiff,*

vs.

**SANOFI-AVENTIS US, LLC**
Sanofi Building D
Corporate Drive
Bridgewater, NJ 08807

-and-

**QUTEN RESEARCH
INSTITUTE, LLC**
10 Bloomfield Avenue
Pine Brook, NJ 07058

-and-

**MK MW ENTERPRISES, LP**
601 S. 10ᵗʰ Street, Ste. 204
Las Vegas, NV 89101

*Defendants.*

|  |
|---|

CIVIL ACTION

NO. _____

**JURY TRIAL DEMANDED**

## CIVIL ACTION COMPLAINT

Plaintiff, Brittany Schenk (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

1

**INTRODUCTION**

1.      This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff, a former employee of Defendants Sanofi-Aventis US, LLC ("Defendant Sanofi"), Quten Research Institute, LLC ("Defendant Quten"), and MK MW Enterprises, LP ("Defendant MK MW")  (collectively referred to as "Defendants"), who have been harmed by the Defendants' discriminatory and retaliatory employment practices.

2.      This action arises under the Family and Medical Leave Act, 29 U.S.C. §2601 et seq. ("FMLA"), and the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 et seq. ("NJLAD").

**JURISDICTION AND VENUE**

3.      The jurisdiction of this Court is invoked, and venue is proper in this judicial district, pursuant to 28 U.S.C. §§1331 and 1391 as Plaintiff Schenk's claims are substantively based on the FMLA.

4.      The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff Schenk's claims arising under the NJLAD.

5.      Plaintiff Schenk has satisfied all other jurisdictional prerequisites to the maintenance of this action.

**PARTIES**

6.      Plaintiff  is  a  thirty-two  (32)  year  old  female  citizen  of  the

Commonwealth of Pennsylvania, residing therein at 779 Bethany Circle, Warminster, Pennsylvania 18974.

7.     Defendant Sanofi-Aventis US, LLC ("Defendant Sanofi") is a corporation duly organized and existing under the laws of the State of Delaware, maintaining a place of business located at Sanofi Building D, Corporate Drive, Bridgewater, New Jersey 08807.  Defendant Sanofi is a pharmaceutical and healthcare company that globally markets a variety of drugs and supplements.

8.     Defendant Quten Research Institute, LLC ("Defendant Quten") is a corporation duly organized and existing under the laws of the State of Delaware, maintaining a place of business located at 10 Bloomfield Avenue, Pine Brook, New Jersey 07058.  Defendant Quten is a marketing company that owns the Qunol brand of supplements.

9.     Defendant MK MW Enterprises, LP ("Defendant MK MW") is a limited partnership duly organized and existing under the laws of the State of Nevada, maintaining a place of business located at 601 S. 10th Street, Suite 204, Las Vegas, Nevada 89101.  Defendant MK MW hired Plaintiff Schenk and, at all times relevant hereto, processed Plaintiff Schenk's payroll.

10.     Because of their interrelation of operations, common ownership of management, centralized control of labor relations, human resources and training, common ownership/governance or financial controls, and other factors, Defendants

3

are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer.

11.     At all times relevant hereto, the Defendants acted through their agents, servants, and employees, who acted within the scope of their authority, course of employment, and under the direct control of the Defendants.

12.     At all times material herein, the Defendants have been a "person" and "employer" as defined under Title VII, the FMLA, and the, and the NJLAD, and have been, and are, subject to the provisions of each said Act.

13.     At all times material herein, Plaintiff Schenk has been an "employee" as defined under Title VII, the FMLA, and the NJLAD and has been, and is, subject to the provisions of each said Act.

## STATEMENT OF FACTS

14.     In or about November of 2021, Defendant MK MW and Defendant Quten hired Plaintiff to serve in the full-time role of Marketing Coordinator.

15.     As a Marketing Coordinator, Plaintiff primarily worked remotely, but was assigned to Defendants' Pine Brook, New Jersey office and team.

16.     In her role as a Marketing Coordinator, Plaintiff was supervised by Jeffrey Factor ("Factor"), a Senior Brand Manager who self-identifies as an employee of Defendant Quten, and Rahul Chowdhury ("Chowdhury"), a Chief

Marketing and Digital Leader who self-identifies as an employee of both Defendant Quten and Defendant Sanofi.

17.    At all times relevant hereto, Plaintiff performed her job responsibilities in a dutiful and highly competent manner.  As evidence of her satisfactory job performance, Plaintiff received positive annual performance evaluations and annual merit-based salary increases.

18.    In or about late 2022, Plaintiff disclosed her pregnancy to Defendants and stated her intent to take a brief maternity leave of absence from work following the birth of her child in June of 2023.  Plaintiff made clear to Defendants that she had every intention and desire to return to work following her maternity leave.

19.    After Plaintiff disclosed her pregnancy and plan to take maternity leave, Defendants began to subject her to discriminatory treatment.

20.    As evidence of the critical nature of Plaintiff's role with Defendants, several weeks prior to Plaintiff's scheduled maternity leave, Factor instructed Plaintiff to train Tuba Karacay ("Karacay"), whom Plaintiff believed to be her temporary replacement, to ensure continuity of functions while Plaintiff would be on leave.  Plaintiff complied with Factor's directive and ensured that Karacay was well trained and prepared to cover her duties while on maternity leave.

21.    On June 5, 2023, Plaintiff gave birth to her son and commenced her maternity leave under the FMLA.

22.     Shortly prior to Plaintiff's planned return to work, Plaintiff was contacted and informed that Defendant Quten had been acquired by Defendant Sanofi and, as a result, she would be considered an employee of Defendant Sanofi as well.

23.     During that discussion, Plaintiff was informed that due to the acquisition and the fact that Defendant Sanofi was "Big Pharma," Plaintiff's job was going to get much harder and that Defendants would now expect more from her in her role.

24.     During that call, Plaintiff was questioned if she even really wanted to return from maternity leave in light of her "current situation" – namely the recent birth of her son and her attendant familial responsibilities.

25.     Plaintiff reiterated that she had every intention and desire to return to work and that she was confident in her ability to succeed under Defendant Sanofi's new ownership.

26.     These comments are evidence of Defendants' erroneous and entirely unfounded perception that Plaintiff would be less focused on her work and less dedicated to her job now that she had a baby to care for.

27.     In September of 2023, Plaintiff returned to work, however, upon her return, Defendants began to effectively strip her of many of her key duties and responsibilities she had performed prior to her commencement of maternity leave.

28.    Importantly, Defendants excluded Plaintiff from meetings in which she had previously played a key role, including, but not limited to, various team meetings concerning artwork and graphic design for marketing materials of Defendants' key product line.   Defendants additionally stripped Plaintiff of her involvement in handling purchase orders and assisting with critical social media campaigns.

29.    In place of her key duties and in an attempt to marginalize Plaintiff and force her out of her job, Defendants assigned Plaintiff tedious and insignificant "busy work" to perform where management did not care about the results and where there was no dialogue concerning said tasks.

30.    Following her return from maternity leave, Plaintiff's managers became even more distant and disinterested in Plaintiff, her duties and performance, and her future role with the organization.

31.    As a result of the obvious and intentional diminution of Plaintiff's role, she proactively reached out to management via email and via Zoom meetings, to request more substantive work and assignments.  Notwithstanding Plaintiff's clear representation that she was ready and willing to take on more work, Defendants ignored Plaintiff's requests.

32.    In or about late December of 2023 or early January of 2024, Defendants re-hired Karacay, the individual whom Defendants had Plaintiff train and who had assumed her duties while on maternity leave.

33.    On February 16, 2024, Jessica Jones ("Jones"), Vice President of Human Resources, and Chowdhury called Plaintiff and abruptly terminated her employment with Defendants, falsely representing to Plaintiff that her position had been "eliminated."

34.    Defendants' articulated reason for Plaintiff's termination is false and pretextual and her employment was actually terminated due to her recent pregnancy, her family responsibilities as a new mom, and in retaliation for exercising her rights to take maternity leave under the FMLA.

35.    As evidence thereof, upon Karacay's re-hire by Defendants, she immediately updated her LinkedIn profile to identify her role with Defendants as a full-time Marketing Coordinator, the same role held by Plaintiff.

36.    Immediately after learning of her termination, Defendants presented Plaintiff with an unsolicited severance and settlement agreement, offering Plaintiff a sum of money in exchange for releasing all legal claims against the Defendants, including claims for "wrongful discharge," violations of the "Family and Medical Leave Act," and for "discrimination" and "retaliation."

37.    No company policy, contract, or law required Defendants to pay Plaintiff severance for the termination of her employment.

38.    Offers of severance, such as the severance Defendants offered to Plaintiff in exchange for a waiver of her legal claims (when not specifically or

lawfully required) is evidence of discrimination, retaliation, and pretext.[1]

## COUNT I
## Violations of the New Jersey Law Against Discrimination "NJLAD"
### ([1] Sex Discrimination Based on Gender and Family Responsibilities; [2] Hostile Work Environment & [3] Retaliation)

39.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40.    The actions of Defendants, through their agents, servants and employees, in subjecting Plaintiff to discrimination on the basis of her sex based on her pregnancy and family responsibilities, ultimately resulting in the termination of her employment, constituted violations of the NJLAD.

41.    Shortly after Plaintiff informed Defendants of her pregnancy and Plaintiff was terminated for pretextual reasons and offered an unsolicited severance in exchange for waiving her legal rights against Defendants.

---

[1] See *Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115, at *14-15 (E.D. Pa. 2013) (employer who offered a sum of severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011) (finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]"); *EEOC v. Republic Servs., Inc.*, 640 F. Supp.2d 1267 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that does not warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by F.R.E. 408); *Brandy v. Maxim Healthcare Servs., Inc.*, 2012 WL 5268365, at *2 (N.D. Ind. 2012) (holding that severance agreements offered at time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation").

42.    In or about late 2022, Plaintiff disclosed her pregnancy to Defendants and stated her intent to take a brief maternity leave of absence from work following the birth of her child in June of 2023.  Plaintiff made clear to Defendants that she had every intention and desire to return to work following her maternity leave.

43.    After Plaintiff disclosed her pregnancy and plan to take maternity leave, Defendants began to subject her to discriminatory treatment as outlined *supra*.

44.    After Plaintiff returned from maternity leave she was essentially stripped of her duties and replaced by an individual she trained prior to her leave who was rehired.

45.    Defendants then informed Plaintiff she was being terminated, and her position was being eliminated.

46.    Defendants' articulated reason for Plaintiff's termination is false and pretextual and her employment was actually terminated due to her recent pregnancy, her family responsibilities as a new mom, and in retaliation for exercising her rights to take maternity leave under the FMLA.

47.    These actions constitute discrimination, retaliation, and a hostile work environment under the NJ LAD.

## COUNT II
## <u>Violations of the Family Medical Leave Act ("FMLA")</u>
### (Retaliation)

49.    The foregoing paragraphs are incorporated herein in their entirety as if

set forth in full.

50.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. §2611(a)(i)(ii).

51.     Plaintiff requested leave from Defendants with whom she had been employed for at least twelve (12) months pursuant to the requirements of 29 U.S.C. §2611(2)(i).

52.     Plaintiff had at least 1,250 hours of service with Defendants during her last full year of employment.

53.     Defendants are engaged in an industry affecting commerce and employed at least fifty (50) or more employees within seventy-five (75) miles of the location where Plaintiff worked for Defendants for each working day during each of the twenty (20) or more calendar work weeks in the current or preceding calendar year, pursuant to 29 U.S.C. §2611(4)(A)(i).

54.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C. §2612(a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

55.     Plaintiff requested FMLA-qualifying leave during the last full year of her employment with Defendants.

56.     Defendants committed retaliation violations of the FMLA by: (1) stripping Plaintiff of her key duties and responsibilities after stating her intent to take FMLA-qualifying maternity leave; (2) failing to reinstate Plaintiff to the same or

11

similar position upon her return from FMLA-qualifying maternity leave and/or hold her position open during her FMLA-qualifying maternity leave; (3) terminating Plaintiff's employment for requesting and exercising her FMLA rights and/or for taking FMLA-qualifying leave; (4) considering Plaintiff's FMLA leave needs in making the decision to terminate her employment; (5) failing to provide Plaintiff with proper FMLA paperwork and/or notices of rights and obligations under the FMLA; (6) engaging in conduct which discouraged Plaintiff from exercising her FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and against the Defendants, and Order that:

A.      Defendants are to be prohibited from continuing to maintain their illegal policies, practices, or custom(s) of discriminating against employees and are to be ordered to promulgate an effective policy against such discrimination/retaliation/interference and to adhere thereto;

B.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld

from the date he first suffered the aforesaid unlawful actions at the hands of Defendant until the date of verdict;

C.    Plaintiff is to be awarded punitive or liquidated damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.    Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (021842003)
Allison A. Barker, Esq. (298092019)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Dated: January 20, 2026

14